UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH D.,[1]

                                      Plaintiff,           Case # 21-CV-48-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

**INTRODUCTION**

Plaintiff Deborah D. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

In April 2019, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 56. She alleged disability since March 20, 2019. *Id.* On August 10, 2020, Administrative Law Judge Arthur Patane ("the ALJ") issued a decision finding that Plaintiff is not

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

disabled. Tr. 10-19. On November 13, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff has severe impairments of

degenerative changes in her left knee, degenerative changes in her lumbar spine, hammer toe, hypertension, osteoarthritis, and status-post left breast cancer, surgery, and chemotherapy. *Id.* At step three, the ALJ found that her impairments do not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Plaintiff retains the RFC to perform a full range of sedentary work. *Id.* At step four, the ALJ found that Plaintiff could perform past relevant work as an audit clerk. Tr. 18. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 18-19.

## II. Analysis

Plaintiff argues the ALJ's decision is erroneous on three grounds. The Court examines each argument in turn.

### a. Plaintiff's Mental Impairments

The record is mixed on the severity of Plaintiff's claimed anxiety, depression, and stress. In November 2017, Plaintiff complained of anxiety and depression at an annual physical examination. *See* Tr. 260. In December 2018, Plaintiff denied anxiety and depression, and reported that she believed her mood would improve when she "retir[ed] in 3/2019." Tr. 266. Plaintiff refused to take medications or seek counseling. *Id.* In April 2019, Plaintiff "was seen for multiple somatic complaints, stress and anxiety." Tr. 270. Plaintiff complained that she was overwhelmed by her day-to-day activities and was not sleeping well. *Id.* The treating nurse practitioner suggested that Plaintiff "see a psychiatrist or counselor" based on her anxiety and "possibl[e] mixed depression." Tr. 271. Shortly after that appointment, Plaintiff completed a function report, in which she stated that her anxiety caused her to avoid crowds and new tasks. Tr. 196. Plaintiff indicated that she did not want to take medications due to unwanted side effects. Tr. 197.

In June 2019, Plaintiff met with consultative examiner Susan Santarpia, Ph.D., for a psychiatric evaluation. Tr. 300. Plaintiff reported difficulty with anxiety but denied receiving counseling, medication, or any other treatment for her condition. *Id.* Plaintiff stated that her retirement was causing "stressful situations" but she did not "wish to receive any other treatment." *Id.* Plaintiff stated that she relies on "positive compensatory coping skills." *Id.* Plaintiff stated that she could engage in activities of daily living, was able to socialize with friends and family, could go grocery shopping and go out to dinner with friends and family. Tr. 302. Plaintiff's mental status examination was unremarkable. *See* Tr. 301-02. Dr. Santarpia diagnosed Plaintiff with "[a]djustment disorder with anxious mood," but identified no functional limitations arising from that diagnosis. Tr. 302-03. Later in that same month, state agency consultant K. Lieber-Diaz, Psy.D., concluded that Plaintiff's anxiety disorder was nonsevere, that she had no limitations in her abilities to understand, remember, or apply information or interact with others, and mild limitations in her abilities to concentrate, persist, or maintain pace, and to adapt or manage herself. *See* Tr. 60-61.

In August 2019, Plaintiff reported anxiety but no other symptoms at an appointment. Tr. 332. In October 2019, another consultant,—J. May, Ph.D.—reviewed Plaintiff's file and concluded that Plaintiff's psychiatric impairments were nonsevere. Tr. 74, 353. Like Dr. Lieber-Diaz, Dr. May concluded that Plaintiff had no limitations in her abilities to understand, remember, or apply information or interact with others, and mild limitations in her abilities to concentrate, persist, or maintain pace, and to adapt or manage herself. *See* Tr. 74. In November 2019, at a rheumatological evaluation, Plaintiff reported anxiety and depression and indicated that she was "not treating" them. Tr. 406. At a December 2019 physical examination, Plaintiff stated that she

was "feeling well" and denied anxiety or depression. Tr. 418. Plaintiff was advised to contact the office if she had "worsening symptoms." Tr. 422.

At the July 2020 hearing, Plaintiff identified her anxiety and stress as contributing factors to her inability to work. Tr. 37, 49. She testified that she suffered from memory deficits. Tr. 50. She woke up with stomach aches due to her anxiety. Tr. 51. Plaintiff testified that, due to her anxiety, she cannot go out in crowds and cannot drive far. Tr. 51-52.

In his decision, the ALJ concluded that Plaintiff's mental impairments were nonsevere. Tr. 12-14. He found persuasive the opinions of Drs. Santarpia, Lieber-Diaz, and May, finding them consistent with the medical evidence "concerning [Plaintiff's] mental health issues." Tr. 13. The ALJ concluded that Plaintiff had no limitations in any of the four "areas of functioning set out in the disability regulations." Tr. 13-14.

On appeal, Plaintiff raises several arguments to challenge the ALJ's step-two finding. First, Plaintiff cites a variety of record evidence to argue that Plaintiff's anxiety was more severe than the ALJ found. *See* ECF No. 12-1 at 13-14; ECF No. 14 at 3. But the mere fact that evidence exists to support Plaintiff's position is not enough to justify relief.[3] *See Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *3 (W.D.N.Y. July 15, 2019) ("[T]he Court is not concerned with whether substantial evidence supports [the claimant's] position; rather, the Court must decide whether substantial evidence supports the ALJ's decision.").

In this case, there was sufficient evidence to allow the ALJ to reasonably conclude that Plaintiff's anxiety, depression, and stress were nonsevere and did not cause any functional

---

[3] Likewise, the mere fact that the ALJ did not mention all of the relevant record evidence is not grounds for remand. *See, e.g.*, ECF No. 12-1 at 16. That "a particular factor or evidentiary item is not *mentioned* does not necessarily mean it was not *considered*." *Younes v. Colvin*, No. 14-cv-170, 2015 WL 1524417, at *4 (N.D.N.Y. Apr. 2, 2015).


limitations. Three medical sources reached that same conclusion, *see* Tr. 60, 302, 353, and the ALJ reasonably found that their view was "consistent with the medical evidence."[4] Tr. 13. Plaintiff only complained of anxiety and depression intermittently; she refused not only medication (fearing the side effects), but also any other treatment (including counseling) for her mental impairments; Plaintiff indicated that she had adequate coping skills; and, until her retirement, Plaintiff was able to perform part-time work despite these impairments. From this evidence, the ALJ could reasonably adopt the position that Plaintiff's mental impairments were nonsevere—*i.e.*, they did not "significantly limit[] [her] . . . mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). For the same reason, the ALJ could reasonably decline to include in the RFC any nonexertional limitations related to Plaintiff's mental impairments. At most, Plaintiff's contrary evidence reveals a factual conflict in the record—concerning the severity of, and functional limitations resulting from, Plaintiff's mental impairments—and it is a conflict "the ALJ was entitled to resolve." *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021). The ALJ reasonably relied on the above-cited evidence to resolve that conflict against Plaintiff.

Second, Plaintiff asserts that the ALJ's decision is inconsistent with the opinions of Drs. Lieber-Diaz and May. This is because they found that Plaintiff had mild limitations in two of the

---

[4] Although the ALJ did not cite all of the relevant treatment notes in his decision, this does not mean, as Plaintiff asserts, that such treatment notes cannot be used to justify the ALJ's conclusion. *See* ECF No. 14 at 3 (asserting that "[c]itation to these treatment notes constitutes improper *post hoc* rationalization"). "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011). In this case, the ALJ stated that the opinions of Drs. Lieber-Diaz, Santarpia, and May were consistent with the "medical evidence," and he cites many of the exhibits containing Plaintiff's mental health records. *See* Tr. 13, 16, 17. From this discussion, the Court is satisfied that the ALJ considered the relevant treatment notes in reaching his finding that Plaintiff's mental impairments are nonsevere. Furthermore, Plaintiff is incorrect when he argues that any treatment notes preceding the alleged onset date are "irrelevant." ECF No. 14 at 4; *see, e.g.*, *Mura v. Colvin*, No. 16-CV-6159, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017) (collecting cases).

four relevant areas of functioning, Tr. 61, 74, while the ALJ found no limitations in any area. Tr. 13-14. Plaintiff fails to identify any prejudice resulting from this discrepancy, however. Under the regulations, if a claimant's limitations are "none" *or* "mild" in the four functional areas, the ALJ will conclude that the claimant's mental impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Dr. Lieber-Diaz and Dr. May found that Plaintiff's mental impairments were either "none" or "mild," and they therefore concluded that those impairments were nonsevere. Tr. 61, 74. In addition, neither of them identified any functional limitations resulting from Plaintiff's impairments. *See id.* Their conclusions are therefore consistent with the ALJ's step-two findings and the RFC.

Third, Plaintiff contends that the ALJ failed to consider the opinion of John Hanavan, a nurse practitioner who evaluated Plaintiff for "multiple somatic complaints, stress and anxiety." Tr. 270-71. After his examination, Hanavan opined that he believed "most of [Plaintiff's] orthopedic issues are related to her anxiety and possibly mixed depression." Tr. 271. He suggested that Plaintiff "see a psychiatrist or counselor," and thought it reasonable for her to file a disability claim "based on her emotional issues and anxiety." *Id.*

Contrary to Plaintiff's argument, the ALJ did in fact discuss Hanavan's opinion in the decision. *See* Tr. 16. Although the ALJ did not fully analyze the persuasiveness of Hanavan's opinion in connection with his analysis of Plaintiff's mental impairments, given the context of the ALJ's discussion of those issues, it is evident why he rejected it. *See* Tr. 13-14, 16; *see also Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) (ALJ's failure to explicitly evaluate opinion evidence as required by the regulations deemed

8

harmless where court could "adequately glean how the ALJ weighed the consistency and supportability factors for [the medical] opinion" (internal quotation marks omitted)).

In sum, none of Plaintiff's arguments justifies remand.

### b. Manipulative Limitations

Next, Plaintiff argues that the ALJ erred when he failed to include any manipulative limitations—*i.e.*, limitations in her ability to handle, finger, or feel—in the RFC.[5] This argument does not merit remand, because, as previously stated, Plaintiff's contrary evidence simply reveals a factual conflict in the record, one which "the ALJ was entitled to resolve." *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021). The ALJ reasonably concluded that Plaintiff had no limitations in her ability to handle, finger, or feel.

As with the evidence related to her mental impairments, the evidence concerning Plaintiff's manipulative limitations is mixed. In March 2017, Plaintiff stated that she had no radicular symptoms in her extremities. Tr. 251. In May 2017, Plaintiff denied joint or muscle pain. Tr. 253. In November 2017, Plaintiff complained of joint pain but did not want follow-up treatment or medication, Tr. 260, and her upper extremities were normal to inspection and palpation. Tr. 261. In February 2018, Plaintiff denied suffering from radicular symptoms in her upper extremities. Tr. 264. Her sensation to light touch was intact. Tr. 265. In December 2018, Plaintiff reported joint pain, but her upper extremities were normal in inspection and palpation. Tr. 266, 268. At an annual follow-up for cancer in December 2018, Plaintiff denied muscle pain, joint stiffness, or joint swelling. Tr. 295. In April 2019, Plaintiff did not identify arm or hand pain as issues. Tr. 270. In June 2019, at a consultative examination with Hongbiao Liu, M.D., Plaintiff

---

[5] Plaintiff also faults the ALJ for failing to include any reaching limitations. *See* ECF No. 12-1 at 17. Plaintiff has shown no prejudice from this alleged error, given that Plaintiff's past relevant work did not require Plaintiff to reach. *See* Tr. 201.

complained that she suffered from numbness in her hands "occasionally." Tr. 304. Nevertheless, Plaintiff exhibited full range of motion in her arms, with stable, nontender joints. Tr. 306. Her hand and finger dexterity was intact, and she had 5/5 grip strength in both hands. *Id.* Dr. Liu did not identify any manipulative limitations in his opinion. Tr. 307. In August 2019, Plaintiff reported joint pain at an appointment. Tr. 332. In December 2019, Plaintiff denied joint pain at an appointment, and she showed normal strength. Tr. 418, 420. The two state agency consultants who reviewed Plaintiff's file did not identify any limitations related to fingering, handling, or feeling. *See* Tr. 64, 76.

At the July 2020 hearing, Plaintiff testified that her osteoarthritis caused difficulty typing. *See* Tr. 42. She also had "a hard time opening things" or "screw[ing] tops on good enough." Tr. 42-43. She had lost strength in her arms and hands to the extent that she needed assistance to open a window. Tr. 50. Plaintiff testified that her husband would tie her shoes for her. *Id.*

In his decision, the ALJ noted Plaintiff's claim that she had difficulties with her hands. *See* Tr. 15. He concluded, however, that the medical evidence "provide[d] a reasonable basis to conclude that [Plaintiff] [was] capable of performing a [full] range of sedentary work." *Id.* The ALJ cited Dr. Liu's consultative examination, in which Plaintiff exhibited "intact" hand and finger dexterity, with "grip strength [that] was 5/5 bilaterally." Tr. 16. The ALJ also cited a treatment note from December 2019, in which Plaintiff denied joint pain, denied neurological weakness, exhibited normal upper extremities "[in] inspection and palpation," and showed "5/5 bilateral[]" strength in her upper extremities. Tr. 17, 418-20. Accordingly, although the ALJ did not discuss Plaintiff's alleged manipulative limitations in great detail, it is evident from his discussion and the RFC that he did not find Plaintiff's allegations consistent with the medical evidence. The ALJ's conclusion is reasonable in light of the medical evidence the ALJ cited, the other record evidence

cited above, and the fact that no medical source opined that Plaintiff had any manipulative limitations. Plaintiff is not entitled to relief on the basis that some evidence exists to support more significant manipulative limitations. *See Youngs*, 2019 WL 3083045, at *3.

### c. Absence of Vocational Expert

Finally, Plaintiff argues that the ALJ acted improperly by classifying her past relevant work as that of an "audit clerk" without the benefit of testimony from a vocational expert. The Court disagrees.

From 2006 to March 20, 2019 (her alleged onset date), Plaintiff worked as a "commercial loan operations clerk" for a bank. Tr. 176, 210. Plaintiff stated that her work consisted of "commercial loan data entry," as she "inputted data and documents relative to commercial loans." Tr. 210. Plaintiff "monitor[ed] receipt of annual reviews," "ensure[d] proper completion and documentation," and "analyze[d] financial [statements] received for business banking and commercial clients [to] ensure they meet policy requirements." Tr. 201. In one report, Plaintiff stated that she sat for "at least 6 ½ hours [per] day" and engaged in "no lifting." Tr. 210. In another report, she stated that she stood for 15 minutes, walked for 15 minutes, and never kneeled, crouched, crawled, handled, reached, or lifted. Tr. 201. At the July 21, 2020 hearing, Plaintiff agreed that she sat for "at least six and a half hours per day," and "[m]aybe even more." Tr. 40.

The ALJ did not call a vocational expert to testify at the hearing. *See* Tr. 34. In his decision, the ALJ classified Plaintiff's prior work as that of an "Audit Clerk." Tr. 18. Under the Dictionary of Occupational Titles ("DOT"), an audit clerk performs the following duties:

> Verifies accuracy of figures, calculations, and postings pertaining to business transactions recorded by other workers: Examines expense accounts, commissions paid to employees, loans made on insurance policies, interest and account payments, cash receipts, sales tickets, bank records, inventory and stock-record sheets, and similar items to verify accuracy of recorded data. Corrects errors or

> lists discrepancies for adjustment. Computes percentages and totals, using adding or calculating machines, and compares results with recorded entries.

Audit Clerk, *Dictionary of Occupational Titles*, DICOT 210.382-010, 1991 WL 671820 (1991). In light of his finding that Plaintiff could perform a full range of sedentary work, the ALJ concluded that Plaintiff could perform this job "as it is generally performed in the national economy and as [Plaintiff] actually performed it," since in both cases the job was performed at the "sedentary exertional level." Tr. 18.

Plaintiff argues that the ALJ's analysis is flawed, in that the duties of an audit clerk, as defined by the DOT, are different from the duties she actually performed.[6] Specifically, the DOT entry for "audit clerk" makes no mention of "inputting data of required documents for commercial loans." ECF No. 12-1 at 11. As a result, the job "does not accurately reflect Plaintiff's job duties." *Id.* This argument does not justify remand.

The regulations provide that if a claimant can return to her past relevant work, "either as the claimant actually performed it" *or* "as generally performed in the national economy," then the claimant is not disabled. *See* 20 C.F.R. § 404.1560(b)(2). Under Social Security Ruling 82-61, the test for actual performance of a plaintiff's past relevant work is "[w]hether the [plaintiff] retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as . . . she *actually* performed it." SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982) (emphasis added). In deciding what the nature of a claimant's duties were, the ALJ relies on the claimant's information about her past work. *See* 20 C.F.R. § 404.1560(b)(2). The DOT or a vocational expert may—but is not required to—be consulted, as such sources can be "helpful in supplementing or

---

[6] Plaintiff also claims that, since her job title changed to "loan administrator" at "some point," it is "possible that [her] duties . . . changed so much as to warrant a different DOT job classification." ECF No. 12-1 at 11. However, Plaintiff reported that her position as "loan administrator" was "really the same duties and involved a lot of data entry of required documents needed to support commercial loans." Tr. 210.

evaluating the accuracy of the claimant's description of [her] past work." *Id.*; *see also Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (summary order) ("While an expert is often called upon to explain the requirements of particular jobs, step four of the analysis does not require that an ALJ consult an expert." (internal quotation marks and citation omitted)).  But because the DOT "only speaks to how jobs are generally performed in the national economy," any difference between "how jobs are generally performed [as set forth in the DOT] and how a claimant [actually] performed them in the past is not determinative if substantial evidence supports a finding that the plaintiff remained able to perform her past relevant work as it was actually performed." *Iqbal v. Comm'r of Soc. Sec.*, No. 16-CV-722, 2017 WL 3475492, at *5 (N.D.N.Y. Aug. 11, 2017).

Here, the ALJ found, and the record confirms, that Plaintiff's prior work was actually performed "at the sedentary exertional level." Tr. 18; *see also* Tr. 40, 201, 210.  Plaintiff does not dispute this point.  *See* ECF No. 12-1 at 10-12; ECF No. 14 at 6-7.  Given that Plaintiff had the RFC to perform a full range of sedentary work, and given that Plaintiff's prior job was actually performed at the sedentary exertional level, substantial evidence supports the ALJ's finding that Plaintiff "retain[ed] the capacity to perform the particular functional demands and job duties peculiar to [her] job as . . . she *actually* performed it." SSR 82-61, 1982 WL 31387, at *1.  That finding was sufficient to deny Plaintiff benefits at step four.  *See* 20 C.F.R. § 404.1560(b)(2).  And in light of that conclusion, it is immaterial that, for purposes of deciding whether Plaintiff could perform her past relevant work as *generally* performed, the ALJ allegedly misclassified Plaintiff's job as that of an audit clerk.  *Accord Iqbal*, 2017 WL 3475492, at *7 ("As substantial evidence supports the ALJ's finding that Plaintiff remained able to perform her past relevant work as actually performed, whether conflicts existed with the D.O.T. definitions showing how those jobs are generally performed in the national economy is immaterial to the issue of whether Plaintiff is

disabled."); *Cobb v. Comm'r of Soc. Sec.*, No. 13-CV-591, 2014 WL 4437566, at *9-10 (N.D.N.Y. Sept. 9, 2014) (because claimant testified that her past relevant work involved lifting at most ten pounds, the ALJ reasonably concluded that she could "perform the work as she actually performed it," regardless "of how the [DOT] categorize[d]" her type of position).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 4, 2022
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York